# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SYNGENTA CROP PROTECTION, INC.,

Plaintiff,

v.

DREXEL CHEMICAL COMPANY, et al.,

Defendants.

Civil Action No. 08-1627 (JDB)

## MEMORANDUM OPINION

Plaintiff Syngenta Crop Protection, Inc. ("Syngenta") and defendant Drexel Chemical Company ("Drexel") are currently engaged in a binding arbitration proceeding initiated under the data-sharing provisions of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 et seq. Syngenta seeks a declaratory judgment that the arbitration panel cannot consider a 1993 Agreement and Stipulation in evaluating Syngenta's data compensation award. Now before the Court is Drexel's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons discussed below, Drexel's motion to dismiss will be granted.

## BACKGROUND

Enacted in 1972, FIFRA governs the registration of pesticides and sets forth the requirements for the submission of health, safety, and environmental data. Under FIFRA, pesticide registrants must demonstrate that their pesticide will "perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136a(a). To satisfy this requirement, a registrant must either submit its own data or cite to data that "appear in the public

literature or that previously had been submitted to the Administrator [of the Environmental

Protection Agency]." § 136a(c)(1)(F).  Applicants citing to another company's data must offer to

compensate the original data submitter.  § 136a(c)(1)(F)(iii).  If no compensation agreement can

be reached, either party may initiate a binding arbitration, governed by the procedures set forth

by the Federal Mediation Conciliation Service ("FMCS").  Id.

        The FIFRA arbitration scheme was created in response to the "'logjam of litigation that

resulted from controversies over data compensation.'"  Thomas v. Union Carbide Agric. Prods.

Co., 473 U.S. 568, 573 (1985) (quoting S. Rep. No. 95-334, at 3 (1977)).  Congress found that

the EPA "'lacked the expertise necessary to establish the proper amount of compensation,'" and

hence compensation "'should be determined to the fullest extent practicable, within the private

sector.'"  Id. (quoting 123 Cong. Rec. 25709-10 (1977) (statement of Sen. Leahy)).  For

arbitration proceedings under FIFRA, the FMCS incorporated the rules of the American

Arbitration Association ("AAA"), a private arbitration service organization.  See 29 C.F.R. §

1440.1; 29 C.F.R. Pt. 1440, App.  FIFRA provides that "the findings and determination of the

arbitrator shall be final and conclusive, and no official or court of the United States shall have

power or jurisdiction to review any such findings and determination, except for fraud,

misrepresentation, or other misconduct by one of the parties to the arbitration or the arbitrator."

7 U.S.C. § 136a(c)(1)(F)(iii).

        In 2004, the EPA required Drexel to offer to compensate Syngenta for using its studies

on the safety of the herbicide atrazine if Drexel wished to renew its registration for atrazine.

Syngenta Opp'n at 3.  The parties could not agree on a compensation amount and Syngenta

subsequently initiated arbitration under FIFRA.  Am. Compl. ¶¶ 16-17.  Eleven months after

Syngenta filed the demand for arbitration, Drexel introduced a 1993 Agreement and Stipulation pertaining to the atrazine studies, which was entered into by Ciba-Geigy Corporation (Syngenta's predecessor) and Drexel as part of a prior FIFRA arbitration.  Id. ¶¶ 18-19.  Syngenta moved to exclude "all claims, evidence and argument" related to the 1993 Agreement and Stipulation.  Id. ¶ 20.  The arbitration panel denied Syngenta's motion in an "Interim Order" on September 5, 2008, stating that "it does have jurisdiction to consider at the hearing of this matter any defense raised by Drexel based on the 1993 settlement agreement."  Id. ¶ 23, Ex. 1, Ex. A.

On September 23, 2008, Syngenta filed a complaint in this Court, seeking a declaratory judgment that Article III of the Constitution bars the arbitration panel from considering the 1993 Agreement and Stipulation.  Syngenta then filed an amended complaint asserting subject matter jurisdiction under:  (1) 28 U.S.C.§ 1331, because this action arises under the Constitution and laws of the United States, and pursuant to Sections 3(c)(1)(F)(iii) and 16(c) of FIFRA, 7 U.S.C. §§ 136a(c)(1)(F)(iii), 136n(c); (2) 28 U.S.C. § 1332(a) based on diversity of citizenship; (3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06; (4) the Mandamus Statute, 28 U.S.C. § 136; (5) the All Writs Act, 28 U.S.C. § 1651; and (6) the Declaratory Judgment Act, 28 U.S.C. § 2201-02.  Am. Compl. ¶¶ 2-4.

Now before the Court is Drexel's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  Drexel argues that Syngenta cannot establish the Court's subject matter jurisdiction for this interlocutory appeal of the FIFRA arbitration panel's interim decision, and that, even if it can, the Court should decline to exercise its discretion to grant declaratory judgment.  See Drexel Mem. at 1.  Syngenta responds that review of the arbitration panel's decision and entry of a declaratory

judgment are appropriate at this time.  <u>See</u> Syngenta Opp'n at 1.

## <u>LEGAL STANDARD</u>

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit</u>, 507 U.S. 163, 164 (1993); <u>Phillips v. Bureau of Prisons</u>, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  <u>Scheuer</u>, 416 U.S. at  236; <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  <u>Trudeau v. Federal Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction.  <u>See</u> <u>US Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103-04 (1998)); <u>see also</u> <u>Orlov v. Howard</u>, 523 F. Supp. 2d 30, 32 (D.D.C. 2007).  Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), <u>Leatherman</u>, 507 U.S. at 164, "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  <u>Grand Lodge</u>, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice</u>

and Procedure § 1350 (2d ed. 1990)).  At the stage of litigation when dismissal is sought, a

plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all

favorable inferences that can be drawn from the alleged facts.  See EEOC v. St. Francis Xavier

Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Additionally, a court may consider material

other than the allegations of the complaint in determining whether it has jurisdiction to hear the

case, as long as it still accepts the factual allegations in the complaint as true.  See Jerome

Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); St. Francis

Xavier Parochial Sch., 117 F.3d at 624-25 n.3.

## DISCUSSION

### I.      Federal Question and Diversity Jurisdiction

In determining subject matter jurisdiction, the Court is guided not by the general

jurisdictional statutes, but by the specific "statutory limitation on judicial review set forth in

FIFRA."  SRM Chem. Ltd., Co., v. Fed. Mediation & Conciliation Serv., 355 F. Supp. 2d 373,

376 (D.D.C. 2005) (citing 7 U.S.C. § 136a(c)(1)(F)(iii)); Nagel v. Thomas, 666 F. Supp. 1002,

1010 (W.D. Mich. 1987) ("[W]here a regulatory statute provides a comprehensive scheme for

judicial review, those provisions are exclusive and preclude actions under general jurisdictional

provisions. . . . FIFRA, as we have seen, is just such a statute."); see also Union Carbide, 473

U.S. at 591 ("[T]he FIFRA arbitration scheme incorporates its own system of internal sanctions

and relies only tangentially, if at all, on the Judicial Branch for enforcement.").  Section 16(c) of

FIFRA grants jurisdiction to the federal district courts "specifically to enforce, and to prevent

and restrain violations of [FIFRA]."  7 U.S.C. § 136n(c).  The FIFRA arbitration scheme allows

judicial review of "the findings and determination of the arbitrator" only in the instance of

"fraud, misrepresentation, or other misconduct by one of the parties to the arbitration or the arbitrator." § 136a(c)(1)(F)(iii).  "This provision protects against arbitrators who abuse or exceed their powers or willfully misconstrue their mandate under the governing law."  Union Carbide, 473 U.S. at 592.  Additionally, "review of constitutional error is preserved."  Id.  Syngenta claims that by deciding to consider the 1993 Agreement and Stipulation between it and Drexel, the arbitration panel violated its statutory mandate under FIFRA by agreeing to adjudicate a private contract claim.  Syngenta Opp'n at 9.  Drexel responds that the arbitration panel's interim order was evidentiary in nature, thus barring any claim of misconduct by the arbitrator or a claim of an unconstitutional exercise of power.  Drexel Mem. at 8.

Under FIFRA's specific judicial review provisions, the initial question is whether the arbitration panel abused its power in electing to consider the 1993 Agreement and Stipulation. The authority of an arbitrator to consider evidence in a FIFRA data compensation dispute is broad.  The FIFRA arbitration rules state that "[t]he arbitrator shall admit all evidence which is relevant, competent, material, not privileged, and not unduly repetitious.  The weight to be given evidence shall be determined by its reliability and probative value."  29 C.F.R. Pt. 1440, App. Sec. 25(a).  In determining compensation, "the arbitrators are free to consider any factors they deem relevant."  PPG Industries Inc. v. Stauffer Chemical Co., 637 F. Supp. 85, 87 (D.D.C. 1986).  FIFRA's legislative history supports a broad grant of authority to the arbitrator in determining compensation: "Legislators and the [EPA] agreed that '[d]etermining the amount and terms of such compensation are matters that do not require active government involvement [and] compensation payable should be determined to the fullest extent practicable, within the private sector.'"  Union Carbide, 473 U.S. at 573 (quoting 123 Cong. Rec. 25710).  Given this

broad discretion granted to the arbitration panel, then, the arbitrators plainly did not "abuse or exceed their powers or willfully misconstrue their mandate" under FIFRA in deciding to consider the 1993 Agreement and Stipulation.  See id. at 592.

Syngenta contends that this interpretation of the arbitration panel's power violates Article III of the Constitution.  Syngenta points to Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), a case holding that a broad grant of jurisdiction by Congress to bankruptcy judges violated Article III.  The Supreme Court held that Congress could not require "the stuff of the traditional actions at common law tried by the courts of Westminster in 1789" to be considered by non-Article III judges.  Northern Pipeline, 458 U.S. at 90.  But in Union Carbide, which upheld the constitutionality of the FIFRA arbitration mechanism, the Supreme Court narrowly construed Northern Pipeline as "establish[ing] only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review."  Union Carbide, 473 U.S. at 584.

So construed, Northern Pipeline does not bar the arbitration panel's consideration of the 1993 Agreement and Stipulation.  Interpretation of this document is not "the stuff of the traditional actions at common law."  See Northern Pipeline, 458 U.S. at 90.  The document was executed prior to a previous FIFRA arbitration, and was intended only to "limit the issues which the arbitrators must decide."  As such, the 1993 Agreement and Stipulation is closely intertwined with the FIFRA arbitration process itself, thus distinguishing interpretation of the agreement from a traditional common law contract action.  Nor does the fact that the Agreement and Stipulation may involve other private interests give rise to a violation of Article III.  "Many

matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." Union Carbide, 473 U.S. at 583.  Hence, the arbitration panel's interim order does not implicate traditional common law contract rights in violation of Article III.

Moreover, the arbitration panel did not issue the interim order "without consent of the litigants," as required for an Article III violation.  Union Carbide, 473 U.S. at 584.  Syngenta itself initiated the pending arbitration proceeding under FIFRA.  Syngenta Opp'n at 3.  And although the 1993 Agreement and Stipulation did not contain an arbitration clause, it was crafted to inform subsequent FIFRA arbitration proceedings.  See 1993 Agreement and Stipulation at 1 ("[T]he parties have requested the arbitration panel to decide upon the compensability of the studies which comprise the Data" and "wish to limit the issues which the arbitrators must decide and shorten the length of the hearing.").  The Agreement and Stipulation also contemplated further arbitration and future data requests in the maintenance of atrazine registrations by Syngenta and Drexel.  1993 Agreement and Stipulation ¶¶ 2, 5, 8.  The Constitution is not offended when parties are willing to arbitrate, which underscores that the arbitration panel's interim order does not violate Article III.  See Union Carbide, 473 U.S. at 584.

Finally, judicial review of an alleged Article III violation is only available if the plaintiff can "demonstrate it has been or inevitably will be subjected to an exercise of such unconstitutional jurisdiction." Union Carbide, 473 U.S. at 580.  At this early stage in the arbitration proceedings, it is impossible to determine what weight, if any, the arbitration panel will place on the 1993 Agreement and Stipulation.  It is therefore not yet clear that the arbitration panel's consideration of the document will constitute the adjudication of a private contract claim,

as Syngenta alleges.  Hence, even if <u>Northern Pipeline</u> were to bar the adjudication of such a

claim, it is simply too early for the Court to determine that abuse by the arbitrator is "inevitable"

so as to vest jurisdiction under FIFRA in this Court.

In sum, the arbitration panel's decision to admit the 1993 Agreement and Stipulation does

not constitute arbitrator misconduct reviewable by a district court under FIFRA.  The panel's

decision to consider the Agreement and Stipulation also does not violate Article III of the

Constitution because it will not "inevitably" transform the present arbitration proceedings into an

adjudication of traditional contract rights.  Therefore, the Court does not possess subject matter

jurisdiction under either the federal question or diversity statutes, as limited by FIFRA.

## II.      Remaining Subject Matter Jurisdiction Claims

Syngenta's remaining assertions of subject matter jurisdiction also fail.  Syngenta first

argues that the Court has subject matter jurisdiction under the APA, 5 U.S.C. §§ 701-06.  But the

APA "'is not a jurisdiction-conferring statute.'"  <u>Oryszak v. Sullivan</u>, No. 07-01141, slip op. at 4

(D.C. Cir. Aug. 14, 2009) (quoting <u>Trudeau v. FTC</u>, 456 F.3d 178, 183 (D.C. Cir. 2006)).

Rather, actions arising under the APA confer federal question jurisdiction, limited by the specific

judicial review provisions of the APA.  <u>Id.</u>  The question, then, is whether the complaint states a

claim under the APA, which grants judicial review to a party "adversely affected or aggrieved by

agency action." 5 U.S.C. § 702.  "[N]othing in the APA authorizes claims against non-federal

entities." <u>Karst Envtl. Educ. & Prot., Inc. v. EPA</u>, 475 F.3d 1291, 1298 (D.C. Cir. 2007).  Here,

the only remaining defendants in this action would be non-federal entities:  Drexel and the AAA.

Indeed, this is consistent with the purpose of the FIFRA arbitration scheme -- to remove data

compensation valuation from "agency personnel to civilian arbitrators." <u>Union Carbide</u>, 473

U.S. at 590.  Absent "agency action," then, Syngenta's complaint fails to state a claim under the APA.[1]

Similarly, the mandamus statute, 28 U.S.C. § 1361, does not confer subject matter jurisdiction in this case.  The statute grants "district courts . . . original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The remedy of mandamus is available "only if:  (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002).  The act sought to be compelled must be a "clear and nondiscretionary duty."  Orlov, 523 F. Supp. 2d at 37.  But Syngenta does not seek to compel "an officer or employee of the United States or any agency thereof" -- both Drexel and the AAA arbitration panel are private, not federal, entities.  28 U.S.C. § 1361.  Syngenta also fails to allege a single "clear and nondiscretionary duty" that federal officials failed to perform -- even if the AAA arbitration panel was a federal agency, the decision to exclude evidence was within the discretion of the arbitrators.  See PPG Industries, 637 F. Supp. at 87 (explaining that the arbitrators have broad discretion in deciding what is relevant to deciding a data compensation dispute).  Consequently, there is no subject matter jurisdiction for a mandamus claim in this case.

Finally, neither the Declaratory Judgment Act nor the All Writs Act provide an independent basis for jurisdiction.  "[T]he All Writs Act allows the Court to order a remedy only where subject matter jurisdiction already exists."  Carson v. U.S. Office of Special Counsel, 563

---

[1] As the D.C. Circuit recently clarified, an APA claim lacking "agency action" is properly dismissed for failure to state a claim, not for a lack of jurisdiction.  See Oryszak, slip op. at 4-5 & n.2.

F. Supp. 2d 286, 288 (D.D.C. 2008).  Similarly, "the Declaratory Judgment Act is not an independent source of federal jurisdiction."  C&E Servs., Inc. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002); see also Schilling v. Rogers, 363 U.S. 666, 677 (1960) (finding that the Declaratory Judgment Act "presupposes the existence of a judicially remediable right").  Because Syngenta has not established subject matter jurisdiction independent of the Declaratory Judgment Act or the All Writs Act, it cannot independently assert subject matter jurisdiction under these statutes.

## CONCLUSION

For the foregoing reasons, the Court will grant Drexel's motion to dismiss.  A separate order accompanies this opinion.


                                          /s/
                                   JOHN D. BATES
                                   United States District Judge

Dated: August 24, 2009